BRYAN SCHWARTZ LAW
Bryan J. Schwartz (SBN 209903)
William C. Jhaveri-Weeks (SBN 289984)
Email: bryan@bryanschwartzlaw.com
        bill@bryanschwartzlaw.com
1330 Broadway, Suite 1630
Oakland, CA 94612
Telephone: (510) 444-9300
Facsimile: (510) 444-9301

GOLDSTEIN, BORGEN, DARDARIAN & HO
David Borgen (SBN 99354)
Laura L. Ho (SBN 173179)
Email:  dborgen@gbdhlegal.com
        lho@gbdhlegal.com
300 Lakeside Drive #1000
Oakland, CA 94612
Telephone: (510) 763-9800
Facsimile (510) 835-1417

*Attorneys for Individual and Representative
Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH J. LEE, MARK G. THOMPSON, and DAVID C. ACREE individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>                    Plaintiffs,<br>  vs.<br><br>JPMORGAN CHASE & CO.; JPMORGAN CHASE BANK, NATIONAL ASSOCIATION; and DOES 1-10, inclusive<br><br>                    Defendants. | Case No.:  13-CV-511 (JLS) (JPR)<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:        November 7, 2014<br>Time:       2:30 p.m.<br>Courtroom: 10A<br>Judge:      Hon. Josephine L. Staton |

NOTICE OF MOTION AND MOTION

TO THE COURT, DEFENDANTS AND ALL OTHER INTERESTED PARTIES:

**PLEASE TAKE NOTICE** that a hearing will be held on Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement on November 7, 2014 at 2:30 p.m. in the Courtroom of the Honorable Josephine L. Staton, Courtroom 10A, located at 411 W. Fourth St., Santa Ana, CA 92701. At the hearing, representative Plaintiffs Kenneth J. Lee, Mark G. Thompson, and David C. Acree, by and through their attorneys and on behalf of all other Appraisers similarly situated, will and hereby do move the Court to:  preliminarily approve the Settlement Agreement between the Plaintiffs and Defendants JPMorgan Chase Bank, N.A. and JPMorgan Chase & Co. (collectively, "Chase" or "Defendants"); certify, for settlement purposes only, the class of Appraisers described herein; name Bryan Schwartz Law and Goldstein Borgen Dardarian & Ho LLP as Class Counsel, Kenneth J. Lee, Mark G. Thompson, and David C. Acree as Class Representatives, and CPT Group, Inc. as the Claims Administrator; authorize the mailing of notice to the Appraiser California Class and nationwide Collective Class; and schedule a final approval hearing date.

The Motion is based upon the Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Points and Authorities in Support Thereof; the Declarations of Bryan J. Schwartz, Esq., and Laura L. Ho, Esq., in support of the motion, and the exhibits thereto, including the Settlement Agreement and the Proposed Notice to the Class; the Declarations of Plaintiffs Lee, Thompson, and Acree in Support of the Motion; all other exhibits and attachments submitted in support of the Motion; any oral argument of counsel; the complete files, records, and pleadings in the above-captioned matter; and such additional matters as the Court may consider. A Proposed Order is submitted herewith.

//

//

1

2  Dated: October 10, 2014                    BRYAN SCHWARTZ LAW
                                              GOLDSTEIN BORGEN DARDARIAN &
3                                             HO LLP

4
                                              By: _____ /s/ Bryan J. Schwartz _____
5                                                       BRYAN J. SCHWARTZ

6
                                              *Attorneys for Individual and Representative*
7                                              *Plaintiffs and the Class*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; 13-CV-00511 (JLS)(JPR)

1

**TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................1

II.   PROCEDURAL BACKGROUND .............................................................3

III.  THE PROPOSED SETTLEMENT TERMS, AND FACTORS IN
      THE DECISION TO SETTLE ..................................................................4

      A.    Proposed Settlement Terms........................................................4

            1.    The Settlement Provides Timely, Meaningful Relief to the
                  Class and Creates Institutional Reform. ...........................4

            2.    The Settlement Process Provides Fair Notice, and the Scope
                  of the Release is Appropriate...........................................6

      B.    Factors in Parties' Decision to Settle. ......................................7

            1.    Without this Settlement, Most (or Nearly All) of the Absent
                  Class Members Would Likely Recover Nothing...........................7

            2.    The Uncertain Outcome on the Merits of Class and Individual
                  Arbitrations Favors this Resolution. ................................9

            3.    The Pending Appeal, Possible further Appeals, and Possible
                  Challenges to Arbitrators' Awards All Favor Settlement ............11

            4.    Willfulness versus Good Faith.......................................12

            5.    Interest and Penalties ..............................................12

IV.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL
      OF THE SETTLEMENT..........................................................................12

      A.    Class Action Settlements Are Encouraged. .............................12

      B.    Plaintiffs Contend that the Settlement Satisfies the FRCP 23
            Requirements............................................................................13

      C.    The Settlement Is Fair, Adequate and Reasonable. ................14

            1.    The Settlement Is Non-Collusive and Was the Product of
                  Extensive Negotiations ................................................15

i

2.    The Strength of Plaintiffs' Case Should Be Weighed Against the Risk, Expense, Complexity and Duration of Further Litigation, and the Risk of Achieving and Maintaining Class Action Status. ........................................................................ 16

3.    The Amount Offered in Settlement Weighs Strongly in Favor of Preliminary Approval. ..................................................... 16

4.    Given the Stage of the Proceedings, Plaintiffs and Counsel Are Well-Situated to Arrive at a Fair Settlement. .......................... 18

5.    The Considerable Experience and Strongly Supportive Views of Counsel Weigh in Favor of Preliminary Approval. .................. 18

6.    All Additional Settlement Terms are Fair. .................................... 18

D.    The FLSA Settlement Should Be Approved as Fair and Reasonable ....... 25

V.    **CONCLUSION** ............................................................................. 25

1

# TABLE OF AUTHORITIES

2

**Federal Cases**

3

4

*Adlao v. JPMorgan Chase & Co.*, 10-cv-4508-SBA (N.D. Cal. May 2, 2012)
   (attached as Schwartz Ex. D) ................................................... 19

5

*Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003) ........................................... 12

6

*American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013) ................. 7

7

*AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) ............................................ 7

8

*Avilez v. Pinkerton Government Services*, 286 F.R.D. 450 (C.D. Cal. 2012) ................ 13

9

*Barrentine v. Arkansas-Best Freight Systems*, 450 U.S. 728 (1981) .............................. 25

10

*Bernstein v. Target Stores, Inc.*, 2013 WL 5807581 (N.D. Cal. Oct. 28, 2013)............... 2

11

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)............................................................. 22

12

*Boyd v. Bank of America Corp.*, 2013 WL 6536751 (C.D. Cal. Dec. 11, 2013) ............. 8

13

*Boyd v. Bank of America Corp.*, — F.R.D. —, 2014 WL 2925098
   (C.D. Cal. Jun. 27, 2014) ................................................... 9, 13

14

*Campbell v. PriceWaterhouseCoopers, LLP*, 287 F.R.D. 615 (E.D. Cal. 2012)............. 13

15

*Carter v. Anderson Merchandisers, LP*, 2010 WL 144067
   (C.D. Cal. Jan. 7, 2010) ................................................... 14, 17

16

*Churchill Village, LLC. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ................... 24

17

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir.1992) ................................. 14

18

*Criswell v. Western Airlines, Inc.*, 709 F.2d 544 (9th Cir. 1983) ................................. 12

19

*Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529 (2d Cir. 2009)................................... 10

20

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2013) ....................................... 24

21

*Ellis v. Costco*, 285 F.R.D. 492 (N.D. Cal. 2012)........................................................ 13

22

*Foster v. Nationwide Mutual Insurance Co.*, 710 F.3d 640 (6th Cir. 2013)................... 11

23

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989)............................................. 12

24

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ...................................... 13

25

26

27

28

iii

*Glass v. UBS Financial Services, Inc.*, 2007 WL 221862
(N.D. Cal. Jan. 26, 2007) .................................................................................. 20, 23

*Heffelfinger v. Electronic Data Systems Corp.*, 2008 WL 8128621
(C.D. Cal. Jan. 7, 2008) ......................................................................................... 13

*In re Beef Industry Antitrust Litigation*, 607 F. 2d 167 (5th Cir. 1979)........................... 14

*In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935
(9th Cir. 2011) ..................................................................................................... 23, 24

*In re Farmers Insurance Exchange*, 481 F.3d 1119 (9th Cir. 2007) ............................. 11

*In re Omnivision Technologies, Inc.*, 2007 WL 4293467 (N.D. Cal. 2007) ................... 23

*In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 571 F.3d 953
(9th Cir. 2009) ........................................................................................................... 8

*Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479 (E.D. Pa. 1975) ................................... 14

*Kakani v. Oracle Corp.*, 2007 WL 1793774 (N.D. Cal. June 19, 2007) ................. 17, 19

*Laguna v. Coverall North America, Inc.*, 753 F.3d 918 (9th Cir. 2014)........................ 23

*La Parne v. Monex Deposit Co.*, 2010 WL 4916606 (C.D. Cal. Nov. 29, 2010)........... 18

*Leyva v. Medline Industries, Inc.*, 716 F.3d 510 (9th Cir. 2013) ................................... 14

*Lloyd v. J.P. Morgan Chase & Co.*, 2013 U.S. Dist. LEXIS 184470
(S.D.N.Y. Oct. 29, 2013)......................................................................................... 7

*Lusby v. Gamestop Inc.*, 2013 WL 1210283 (N.D. Cal. Mar. 25, 2013) ...................... 17

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ................................. 25

*Ma v. Covidien Holding, Inc.*, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014)............. 14, 17

*McKenzie v. Federal Express Corp.*, 2012 WL 2930201 (C.D. Cal. July 2, 2012) ........ 14

*Mojica v. Compass Group*, 13-cv-1754 (C.D. Cal. Mar. 14, 2014)
(attached as Schwartz Ex. B)..................................................................................... 17

*Officers for Justice v. Civil Service Commission*, 688 F.2d 615 (9th Cir. 1982)............ 14

*Opalinski v. Robert Half International Inc.*, 761 F.3d 326 (3d Cir. 2014) ...................... 7

*O'Sullivan v. AMN Services, Inc.*, 12-cv-2125 (N.D. Cal. Feb. 7, 2014)
    (attached as Schwartz Ex. C) ................................................................ 17

*Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856 (C.D. Cal. 2012) ............. 9, 10

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ............................... 16

*Roy v. County of Lexington, S.C.*, 141 F.3d 533 (4th Cir. 1998) ................................... 16

*Rutlin v. Prime Succession, Inc.*, 220 F.3d 737 (6th Cir. 2000) ...................................... 11

*Rutti v. Lojack Corp.*, 2012 WL 3151077 (C.D. Cal. July 31, 2012) ........................ 7, 20

*Satchell v. Federal Express Corp.*, 2007 WL 1114010 (N.D. Cal. Apr.13, 2007) .......... 15

*Solis v. Washington*, 656 F.3d 1079 (9th Cir. 2011) ...................................................... 10

*Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003) ...................................................... 19, 22

*Tijero v. Aaron Brothers, Inc.*, 2013 WL 60464 (N.D. Cal. Jan. 2, 2013) .................... 17

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) .................. 20

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) ......................... 9

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ......................................... 23

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ................................................. 9

*Wallace v. Countrywide Home Loans Inc.*, 2013 WL 1944458
    (C.D. Cal. Apr. 29, 2013) ..................................................................... 16


**State Cases**

*Bell v. Farmers Insurance Exchange*, 135 Cal. App. 4th 1138 (2006) ........................... 12


**Statutes, Regulations, Rules and Other Authority**

29 C.F.R. § 541.200 ........................................................................................................ 9

29 C.F.R. § 541.300 ...................................................................................................... 10

29 C.F.R. § 541.301 ................................................................................................ 10, 11

29 U.S.C. § 213(a)(1) ............................................................................. 9

29 U.S.C. § 216(b) ....................................................................... 7, 8, 25

29 U.S.C. § 255(a) ............................................................................... 12

California Business & Professions Code § 17200 ................................. 3

California Labor Code § 203 .............................................................. 3, 12

California Labor Code § 226 ................................................................. 12

California Labor Code § 2698 *et seq.* ("PAGA") .............................. 3, 12

California Wage Order 4-2001, 8 California Code of Regulations § 11040 .................... 9

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") ............................... *passim*

Federal Rule of Civil Procedure 23 ............................................. 2, 8, 13, 14

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; 13-CV-00511 (JLS)(JPR)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This is a wage and hour class and collective action brought under California and federal law by commercial real estate appraisers employed by Defendants. As alleged by Plaintiffs, these employees produce or review appraisal reports that provide estimated values of properties in connection with loans offered by Defendants. Plaintiffs allege that Defendants misclassified them as exempt from overtime and other wage protections. Defendants maintain the classification was proper. No Ninth Circuit jurisprudence addresses real estate appraiser classification. In this unopposed Motion, Plaintiffs seek preliminary approval of the settlement of the Appraisers' claims.

The Parties stipulated to the dismissal of the case, in light of arbitration agreements signed by the named plaintiffs. Plaintiffs thereupon filed a class arbitration and three individual arbitrations with the American Arbitration Association ("AAA"). The Parties then engaged in a full-day mediation with Michael Dickstein, one of the state's top wage/hour class action mediators. After the mediation failed to result in a resolution, the parties continued to negotiate with the help of Mr. Dickstein and bilaterally, and eventually finalized a settlement agreement (the "Settlement") nearly four months after the mediation.

The Settlement is an extraordinarily positive outcome for the Appraisers. The Settlement includes a payment of $2,400,000, all of which will be distributed and none of which will revert to Defendants, plus payment of the employers' share of payroll taxes. The Settlement also includes a reclassification of the Commercial Appraiser I position to non-exempt, which Plaintiffs expect to have significant financial benefit for employees in that position going forward. The Settlement, net of fees and costs, pays on average approximately $9,500 each to approximately 158 Appraisers who worked for Defendants since 2009 (in California) or 2010 (nationwide).

Absent the Settlement, the vast majority of these employees would likely recover nothing. Ninety-nine of them signed arbitration agreements prohibiting class or collective arbitration, meaning that in order to recover anything, they would have had to

1

file and win individual arbitrations – a step that few employees would be willing to take against their employer. Another 38 of them signed arbitration agreements that were "silent" as to class arbitration, and an arbitrator could easily interpret that silence as a bar to class arbitration. In such an event, it is likely that not a single one of the 158 Class Members would have been able to bring a class claim. Finally, 21 of them have no arbitration agreements and would have to proceed individually in Court – being too small a group to meet Rule 23's numerosity requirement. Despite these facts, the Settlement has achieved an exceptional monetary recovery for these employees.

The Settlement readily satisfies the standard for preliminary approval, fairly and appropriately resolving the claims of the Class. The eventual final fairness hearing will provide another opportunity to review the Settlement, with the benefit of class members' responses and rate of participation. Accordingly, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement and order that the Class be sent notice of the Proposed Settlement in the form submitted herewith; (2) certify the California class for purposes of settlement only, and approve Plaintiffs Lee, Thompson and Acree as Class Representatives and Bryan Schwartz Law and Goldstein Borgen Dardarian & Ho as class counsel; (3) preliminarily approve the requested enhancement payments to the Class Representatives and Plaintiffs Joel Cuthbert and Myles Norton; and (4) schedule a final approval hearing.[1]

---

[1] Plaintiffs seek settlement approval from this Court for three primary reasons: (1) the Parties are not able to ensure a fully effective class settlement in arbitration given that 21 of the putative class members never signed arbitration agreements (*see* Declaration of Bryan J. Schwartz in Support of Plaintiff's Motion for Preliminary Approval, filed herewith ("Schwartz Decl.") ¶ 6; (2) courts may reopen cases to ensure approval of an agreement releasing disputed wage claims (*see, e.g.*, *Bernstein v. Target Stores, Inc.*, 2013 WL 5807581, at *2 (N.D. Cal. Oct. 28, 2013); and (3) approval of the class settlement will resolve Defendants' appeal of the Court's Order to the Ninth Circuit, Case No. 13-57024.

2

MEM. OF PTS. & AUTHS. IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 13-CV-00511 (JLS)(JPR)

## II. PROCEDURAL BACKGROUND

On March 29, 2013, Plaintiffs Kenneth Lee and Mark Thompson commenced this class and collective action alleging California and federal statutory wage violations plus unfair competition in violation of California Business and Professions Code § 17200 *et seq*. *See* ECF No. 1. On May 1, 2013, Plaintiffs filed a First Amended Complaint, adding claims for waiting time penalties (Cal. Labor Code § 203) and civil penalties under the Private Attorneys General Act of 2004 (Cal. Labor Code § 2698 *et seq*.) ("PAGA"). ECF No. 10.

On June 3, 2013, Defendants filed a Motion to Compel Arbitration. ECF No. 14. On June 24, 2013, Defendants also filed a Motion for a Protective Order, seeking to limit Plaintiff's counsel's communications with potential class and collective action members. ECF No. 29. The Court took Defendants' Motion for Protective Order off calendar, holding that Defendants had not sufficiently met and conferred before filing the motion. ECF No. 45 (Minute Order). Defendants later stipulated to the withdrawal of the motion. *See* ECF No. 51.

On July 2, 2013, Plaintiffs filed the Second Amended Complaint ("SAC") adding Representative Plaintiff David C. Acree. ECF No. 38. Defendants filed an answer and counterclaims on July 24, 2013. ECF No. 44.

The SAC defines the Collective Class as: "All persons who are or have been employed by Defendants as a commercial production appraiser ("Appraiser I;" "Appraiser II;" "Senior Appraiser;" or positions consisting of similar job duties) or commercial review appraiser ("Review Appraiser;" "Senior Review Appraiser;" or positions consisting of similar job duties) in the CTL Appraisal division within the United States at any time from three years prior to the filing of this Complaint to the final disposition of this case." *See* SAC (ECF No. 38) ¶ 18. The SAC defines the California Class similarly, with a 4-year statute of limitations, a geographic limitation to California, and 2 sub-classes for penalty claims. *Id.* ¶¶ 32-34.

Because Plaintiffs had signed arbitration agreements, on August 16, 2013, the parties stipulated to withdraw the claims and proceed in arbitration. ECF No. 46. While

some of the agreements called for arbitration on an individual basis only, others were silent on the question of class arbitration; the parties agreed to submit to the Court two questions: (1) does the Court decide whether the "silent" arbitration agreements permit classwide arbitration, or does the Arbitrator do so; and (2) if the Court decides, do the "silent" arbitration agreements prohibit arbitration on a class basis? ECF No. 46.

On November 14, 2013, the Court held that it was for the Arbitrator to decide whether the agreements prohibit class arbitration, and dismissed the action. ECF No. 63. Defendants filed an appeal of that ruling to the Ninth Circuit. ECF No. 64.

Plaintiffs then filed their actions with the AAA asserting and class claims, respectively, depending on which arbitration agreement they had signed. *See* Schwartz Decl. ¶ 5.

On June 17, 2014, the Parties began mediation with Michael Dickstein. *See* Schwartz Decl. ¶ 9. The Parties exchanged detailed mediation briefs, and Defendants provided data concerning the class members. *Id.* The mediation did not result in a settlement; however, the Parties remained in communication with the mediator. *Id.* ¶ 10. On July 16, 2014, the Parties fully executed a Memorandum of Understanding encompassing a detailed mediator's proposal. *Id.*

The Parties finally fully executed the Settlement on October 10, 2014. Schwartz Decl. ¶ 10. Upon reaching an agreement to settle, the Parties agreed to seek this Court's approval of the proposed Settlement. *Id.* ¶ 11.

## III.   THE PROPOSED SETTLEMENT TERMS, AND FACTORS IN THE DECISION TO SETTLE

### A.   Proposed Settlement Terms

#### 1.   The Settlement Provides Timely, Meaningful Relief to the Class and Creates Institutional Reform.

The Settlement calls for Defendants' common fund payment of $2,400,000, none of which will revert to them unless the Settlement fails altogether. *See* Schwartz Decl. Exhibit A (Settlement Agreement) (hereinafter "Exh. A") § 2.2.2. In particular, unless more than 5% of the California Class opts out, Defendants will fund the settlement plus

4

the employer's share of payroll taxes within 30 days of final approval and judgment. *Id.* §§ 2.11.1, 2.7.1.

From the $2,400,000 common fund, the settlement calls for:

- the payment of one-third of the Settlement Amount as attorneys' fees ($800,000) (Exh. A § 2.9.1);

- reimbursement of actual litigation costs, not more than $25,000 (*id.*);

- enhancement payments totaling $45,000 to the following individuals: Mr. Lee ($15,000), Mr. Thompson ($10,000), Mr. Acree ($10,000), Mr. Cuthbert ($5,000), and Mr. Norton ($5,000). (Exh. A § 2.9.2);

- a payment of $7,500 to the California Labor Workforce Development Agency ("LWDA") for the PAGA claims (Exh. A § 2.2.6); and

- claims administrator charges for mailing the Notice, processing opt-ins, calculating payment, issuing checks, and related tasks, not to exceed $20,000. *See* Exh. A § 2.5.6; Schwartz Decl. ¶ 25 & Ex. E.

The remaining amount – which Plaintiffs' counsel estimates to be $1,512,500 ("Net Settlement Amount") – will provide on average approximately $9,500 each to the 158 class members who either do not opt out (if they are in California) or who opt into the settlement by signing the back of their Settlement Check (if they are outside California). *See* Schwartz Decl. ¶ 19. The distribution among the Class will be done fairly, with Class Members allocated a share of the Net Settlement Amount based on the number of workweeks they worked for Defendants during the relevant period. *See* Exh. A § 2.2.2. In addition, because California Settlement Class members have claims for meal/rest period violations, PAGA penalties, waiting time violations, and wage statement violations, they will receive 1.64 times as large a pro rata share per workweek as Non-California Settlement Class Members. *Id.*; Schwartz Decl. ¶ 13.

The Commercial Appraiser I position will be reclassified (*see* Exh. A § 2.12.6), so that employees in that position will begin to be compensated for their overtime and (in California) missed meal/rest periods, and will receive wage statements with itemizations in recognition of their non-exempt status. Plaintiffs anticipate that this change will result in extensive financial benefits in the future. *See* Schwartz Decl. ¶ 14.

### 2.    The Settlement Process Provides Fair Notice, and the Scope of the Release is Appropriate.

The agreed-upon Class Notice (Exhibit 1 to the Settlement Agreement) explains the purpose of the Notice, and describes the litigation, the terms of the Settlement, and each Class Member's options with regard to participating in the Settlement. Exh. A at Ex. 1. The Notice provides information regarding the final approval hearing and how Class Members can obtain additional information or opt out. *Id.* The Class Notices will also inform each recipient of his or her eligible number of workweeks, and will provide opportunity for the Class Member to dispute the calculated number of workweeks. *Id.*

California Class Members may elect to opt out of the Settlement Class and thus exclude themselves from the litigation and the Settlement. *Id.* at 5-6. California Class Members who do not timely opt out will be members of the Settlement Class.

All Class Members, unless they opt out of the Settlement, will receive a check in the mail. Exh. A § 2.7.1. The back of the check will state that by endorsing the check, the payee agrees to release all relevant wage and hour claims at issue in this suit. *Id.* § 2.6.4. The Notice explains that even if California Class Members do not cash the check, they will be subject to the judgment and its associated release of California claims (but not Fair Labor Standards Act ("FLSA") claims) unless they affirmatively opt out. *Id.* at Ex. 1. Class Members who affirmatively opt out will not receive a settlement payment, but also will not be subject to any release of claims. *Id.* at 5-6. As explained in more detail in the Notice, California Class Members who do not opt out may object to the Settlement.  *Id.* at 6.

When the judgment becomes final, the Class Representatives and each of the Class Members who does not opt out will release all wage and hour claims through the date of final approval that relate to the claims asserted in the lawsuit – except for the FLSA claims of any California Settlement Class Members who do not deposit their checks. Exh. A § 2.6.4. Only the Plaintiffs receiving enhancements (Messrs. Lee, Thompson, Acree, Cuthbert & Norton) are required to execute a general release of all claims existing as of the date of final approval. *See id.* § 1.9.

6

MEM. OF PTS. & AUTHS. IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 13-CV-00511 (JLS)(JPR)

### B.     Factors in Parties' Decision to Settle.

Factors the Parties considered in electing to settle include the following.

#### 1.     Without this Settlement, Most (or Nearly All) of the Absent Class Members Would Likely Recover Nothing.

Of the 158 class members who will be eligible to recover under this Settlement, 99 of them have signed arbitration agreements that explicitly waive the right to proceed on a class basis, whether in arbitration or court. *See* Schwartz Decl. ¶ 6. Although Plaintiffs contend that Plaintiffs would be entitled to send a Notice to such employees under the FLSA, 29 U.S.C. § 216(b), informing them of their rights, *see Lloyd v. J.P. Morgan Chase & Co.*, 2013 U.S. Dist. LEXIS 184470, at *3-4 (S.D.N.Y. Oct. 29, 2013), these employees would likely be forced to proceed in individual arbitrations, absent this Settlement. *See* Schwartz Decl. ¶ 6 (citing *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), and *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013)). Given the amount at stake for each employee, the burden of proceeding on an individual basis, and the fears associated with filing a suit against one's employer, *see Rutti v. Lojack Corp.*, 2012 WL 3151077, at *5 (C.D. Cal. July 31, 2012) (Carter, J), Plaintiffs' Counsel believes that few of the Class Members would file individual arbitration claims, and that most of the Class would thus recover nothing absent a Settlement. *See* Schwartz Decl. ¶ 7. This is consistent with the fact that, despite proactive outreach by Plaintiffs' Counsel, only five individuals have stepped forward to participate. *Id.* ¶ 8. This makes the Settlement an exceptional result.

Of the 158 class members, 38 signed arbitration agreements that are silent as to Class arbitration. Schwartz Decl. ¶ 6. As noted, the Court held that it is for the arbitrator to decide whether such employees can proceed on a class basis. The Parties fully briefed this issue, there is authority supporting both arguments (*compare* ECF No. 63 *with Opalinski v. Robert Half Intern. Inc.*, 761 F.3d 326, 331 (3d Cir. 2014)), and Defendants appealed the ruling to the Ninth Circuit. Schwartz Decl. ¶ 4. Even assuming Plaintiffs prevail on appeal, if the arbitrator construes the availability of class claims against Plaintiffs, these 38 employees, too, will recover nothing unless they are willing

to prosecute individual arbitrations.[2] *Id.* ¶ 14. This would also mean that the remaining group of 21 Class Members – who signed no arbitration agreement – would not be able to meet the numerosity requirement or Rule 23(a) to proceed on a class basis. *Id.* ¶ 7.

If the arbitrator rules that Class Arbitration is available to the 38 employees who signed "silent" arbitration agreements, Plaintiffs expect to win conditional certification under the "fairly lenient" FLSA conditional certification standard, given Plaintiffs' allegation that Production and Review Appraisers throughout the company performed the same basic duties. Plaintiffs would, thus, likely receive permission to issue an FLSA Notice to the collective class under 29 U.S.C. § 216(b). *Boyd v. Bank of Am. Corp.*, 2013 WL 6536751 (C.D. Cal. Dec. 11, 2013) (granting conditional certification to nationwide class of production and review appraisers). Plaintiffs would then likely face a motion to decertify, which would require them to meet a more stringent standard. Plaintiffs would also likely meet strong resistance from Defendants in Plaintiffs' effort to satisfy the standard for Class Certification of a California Class under the AAA rules.

All misclassification cases carry the risk of denied certification or decertification. *Seee, e.g.*, *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953 (9th Cir.

---

[2] Plaintiffs have argued that the "silent" arbitration contract should be interpreted to contemplate class arbitration. Among other things, the agreement covers "all civil claims," and states that "arbitration shall be in lieu of any and all lawsuits or other civil legal proceedings." *See* Pls.' Opp'n to Mot. to Compel (ECF No. 53) 11-13. The agreement also incorporates the AAA rules, which provide for class arbitration. *Id.* However, Defendants have argued that the agreements do not contain any provisions demonstrating an intent to permit class or collective arbitration. *See* Mot. to Compel Arb. (ECF No. 49-1) 10-15. Defendants argue, among other things, that the agreements' silence with respect to class proceedings evidences an intent not to arbitrate on a class basis and that the agreements refer to "WaMu and I" or variations thereof, suggesting only bilateral arbitration. *Id.* The uncertain outcome of this argument weighs in favor of the Settlement.

2009); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009). Defendants will argue that individualized issues defeat certification, as in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). In opposing certification, Defendants would allege differences in the way Appraisers carried out their duties, even if they were instructed to follow the same guidelines, and other reasons why class treatment is not desirable, such as Defendants' potential need to cross-examine Class Members concerning hours worked. *But see Boyd v. Bank of Am. Corp.*, — F.R.D. —, 2014 WL 2925098 (C.D. Cal. Jun. 27, 2014) (granting certification to class of appraisers).

### 2. The Uncertain Outcome on the Merits of Class and Individual Arbitrations Favors this Resolution.

The uncertain outcome of arbitration on the merits provides an incentive for both Parties to settle. Full relief would result in a greater recovery for Plaintiffs; likewise, if Defendants prevailed in some arbitrations, those Plaintiffs would recover nothing.

Plaintiffs contend that Defendants will be unable to establish that Appraisers fell into any overtime exemption, under Federal or California law. To fall within the administrative exemption under the FLSA, an employee's primary duty must be "office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and must include "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a); 29 U.S.C. § 213(a)(1). Nearly identical tests apply under California Wage Order 4-2001, codified as 8 Cal. Code Regs. § 11040. *See* Wage Order 4 § 1(A)(2); *see also Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 868-69 (C.D. Cal. 2012). Defendants must satisfy both of these prongs to meet the exemption.[3]

---

[3] Appraisers who earned $100,000 or more will be federally exempt if they meet *either* the directly-related prong *or* the discretion-and-independent-judgment prong.

Plaintiffs argue that Appraisers produce or review appraisal reports, day in and day out, meeting production quotas, and ensuring that the reports are complete and meet the Company's detailed guidelines. Decl. of Kenneth Lee, dated July 12, 2013 (ECF No. 39-1) ("Lee Decl.") ¶¶ 3-11; Decl. of Mark Thompson, dated July 12, 2013 (ECF No. 39-2) ("Thompson Decl.") ¶¶ 3-8. Plaintiffs allege that Appraisers are compensated based on production. Lee Decl. ¶ 12; Thompson Decl. ¶ 9. They do not have supervisory responsibilities or advise management. Lee Decl. ¶¶ 4, 17; Thompson Decl. ¶¶ 4, 12; *Rieve*, 870 F. Supp. 2d at 868-69 (to be administratively exempt, employees typically would supervise others and have authority to make decisions affecting company policy). Plaintiffs further allege that each report they produce or review is "transaction-specific," not related to the overarching administration of the business. They are "production" employees. *See Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 532-35 (2d Cir. 2009) (Chase mortgage underwriters non-exempt because they were "production" workers).

With respect to the professional exemption, Defendants would have to establish that Appraisers are required to have "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. §§ 541.300(a)(2)(i), 541.301. However, Plaintiffs argue that no degree higher than a high school diploma is required to become certain of the Appraiser positions. Lee Decl. ¶ 19; Thompson Decl. ¶ 14. Plaintiffs contend that although Appraisers must obtain a state license, the requirements are primarily on-the-job apprenticeship, which weighs against applicability of the professional exemption. *See* 29 C.F.R. § 541.301(d); *Solis v. Wash.*, 656 F.3d 1079, 1088 (9th Cir. 2011).

On the other hand, Defendants take the position that Appraisers satisfy both exemptions. Defendants argue that Appraisers exercise significant discretion in the way they design their own investigations to place values on complex, high-value income-generating commercial properties. Schwartz Decl. ¶ 15. Defendants point to the fact that Appraisers are mandated to be "independent" from persons who might seek to

10

influence the outcome of the appraisal. *Id.* Defendants believe that such discretion and independence causes Appraisers to fall within the administrative and professional exemptions. With respect to the administrative exemption, Defendants contend that appraisals affect business decisions about whether to issue loans, and therefore constitute servicing Defendants' business operations. *See, e.g.*, *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640, 646 (6th Cir. 2013). In addition, Defendants argue that appraiser licensing requirements bring them under the professional exemption. Schwartz Decl. ¶ 15; 29 C.F.R. § 541.301(e) (exemption can include chefs, athletic trainers, and licensed funeral directors and embalmers); *see also Rutlin v. Prime Succession, Inc.*, 220 F.3d 737, 742 (6th Cir. 2000) (licensed funeral director was "learned professional" despite absence of a college degree requirement).

There is no Ninth Circuit authority on point regarding Appraisers' classification, creating uncertainty for both sides, although Defendants have argued that cases holding insurance claims adjusters to be administratively exempt will be persuasive. Schwartz Decl. ¶ 15; *In re Farmers Ins. Exch.*, 481 F.3d 1119 (9th Cir. 2007). Misclassification cases always present a significant risk of losing on the merits after extensive litigation. *See, e.g.*, *In re Farmers*, 481 F.3d at 1132.

### 3. The Pending Appeal, Possible further Appeals, and Possible Challenges to Arbitrators' Awards All Favor Settlement.

Absent this Settlement, Defendants' appeal regarding individual arbitrations would proceed. If Defendants prevail, the case would return to this Court for a decision about whether the "silent" arbitration agreements prohibit class arbitration. Regardless of this Court's decision on remand, an appeal would be likely, resulting in further delay. *See* Schwartz Decl. ¶ 14.

However the appeal was resolved, Plaintiffs would eventually proceed with arbitrations, either on a class and individual basis, or on individual-only bases. *See* Schwartz Decl. ¶ 14. In either case, the arbitrations would result in significant expenses. Regardless of who prevailed in the arbitrations, subsequent court proceedings would likely be required to enter judgment and, likely, to challenge the arbitrators' rulings. *Id.*

11

Even if Plaintiffs prevailed every step of the way, the Class would not recover for years, whereas under the Settlement, the Class will receive payment within months. *Id.*

### 4. Willfulness versus Good Faith

Plaintiffs have not yet established that Defendants' alleged violations of the labor laws were "willful" under the FLSA. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003) (standard for willfulness). Defendants can also be expected to assert a "good faith" defense to Plaintiffs' claims under §§ 203 and 226 of the California Labor Code, in light of the lack of authority directly on point. If Plaintiffs were unable to establish willfulness, the statute of limitations under the FLSA would be reduced to two years. *See* 29 U.S.C. § 255(a). In addition, if Defendants were successful in a good faith defense, such would bar Plaintiffs' claims under Labor Code §§ 203 and 226.

### 5. Interest and Penalties

The Parties agree that fifty percent of the settlement payment is related to interest and penalties (Exh. A § 2.2.4). This estimate is reasonable, because PAGA and other penalty claims asserted are a significant proportion of the estimated damages exposure, and because interest rates can be as high as 10 percent. *See Bell v. Farmers Ins. Exch.*, 135 Cal.App.4th 1138, 1150 (2006) (affirming 10 percent prejudgment interest rate on unpaid wages); *Criswell v. W. Airlines, Inc.*, 709 F.2d 544, 556-57 (9th Cir. 1983) (awarding California's statutory rate of 7 percent). However, absent the Settlement, Plaintiffs would be at risk of failing to recover interest and penalties, in full or in part.

## IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT

The Settlement is fair, adequate and reasonable. Plaintiffs request the Court to certify the proposed Class for purposes of giving effect to the Settlement only.

### A. Class Action Settlements Are Encouraged.

Federal law strongly encourages settlements in the context of class actions. *See, e.g., Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989). Both sides believe their best interests are served by entering into the Settlement Agreement, rather than proceeding to multiple arbitrations on the Appraisers' claims and appeals. Preliminary

approval is proper because this settlement falls within the range of reasonableness for possible final approval. *See Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

**B.      Plaintiffs Contend that the Settlement Satisfies the FRCP 23 Requirements.**

For settlement purposes, Plaintiffs submit that the Class satisfies the criteria of Rule 23(a): numerosity, typicality, adequacy of the representation, and commonality.

Forty members presumptively satisfies the numerosity requirement, *see Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450, 456 (C.D. Cal. 2012), so this class of approximately 100 California members (approximately 40 if all who signed arbitration class waivers are excluded) meets the requirement. Plaintiffs contend they are typical because they performed the same duties as the Class, were classified as exempt, and did not receive overtime pay or breaks. *See Campbell v. PriceWaterhouseCoopers, LLP*, 287 F.R.D. 615, 623 (E.D. Cal. 2012). Plaintiffs assert that they satisfy adequacy, having no conflicts with the class, and being represented by qualified counsel. *Ellis v. Costco*, 285 F.R.D. 492, 535 (N.D. Cal. 2012); *See* Schwartz Decl. ¶¶ 21-22; Declaration of Laura L. Ho, Esq., submitted herewith ("Ho Decl.") ¶¶ 3-4.

Plaintiffs contend that the common question of whether Appraisers' job duties are exempt predominates over individual issues. *See, e.g.*, *Heffelfinger v. Elec. Data Sys. Corp.*, 2008 WL 8128621 (C.D. Cal. Jan. 7, 2008), *aff'd* 492 F. App'x 710, 714 (9th Cir. 2012) (granting class certification where administrative exemption turned on whether nature of common job duties was exempt). Similarly, Plaintiffs maintain that the professional exemption can be resolved classwide. It is the job's requirements – not each individual's resumé – that drive the exemption test. Some Appraisers need only possess a high school degree, and the state's mandatory licensing requirements are the same for all California appraisers. *See Campbell*, 287 F.R.D. at 621. Plaintiffs assert that their case will stand or fall with respect to the entire class, making class certification appropriate. *See, e.g.*, *Boyd*, 2014 WL 2925098, at *11-12 (appraisers all performed same basic duties subject to same detailed corporate and regulatory policies).

Plaintiffs maintain that individual damages questions do not defeat certification. *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013) ("[D]amages is invariably an individual question and does not defeat class action treatment.").

### C.   The Settlement Is Fair, Adequate and Reasonable.

Preliminary approval is appropriate if the proposed settlement is "fair, adequate and reasonable." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *3 (C.D. Cal. Jan. 31, 2014) (Carter, J.); *see also* Fed. R. Civ. P. 23(e)(1)(C). Settlements should be approved, as a matter of discretion, if they are non-collusive and take into account "all the normal perils of litigation as well as the additional uncertainties inherent in complex class actions." *In re Beef Indus. Antitrust Litig.*, 607 F. 2d 167, 179 (5th Cir. 1979). Relevant factors include "the strength of Plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir.1992); *Carter v. Anderson Merchandisers, LP*, 2010 WL 144067 (C.D. Cal. Jan. 7, 2010) (Philips, J.).[4] When a settlement is reached, approval should be denied "only with considerable circumspection." *Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481 (E.D. Pa. 1975). Here, the factors weigh heavily in favor of granting preliminary approval.

---

[4] This matter does not involve a governmental participant other than the LWDA, *see McKenzie v. Fed. Exp. Corp.*, 2012 WL 2930201 (C.D. Cal. July 2, 2012) (Feess, J.) (compliance with LWDA notice requirement and payment of 75% of PAGA penalties favors approval of settlement). The reaction of the class members to the settlement will be better gauged at final approval. *See infra* for a discussion of the other factors.

14

MEM. OF PTS. & AUTHS. IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT; 13-CV-00511 (JLS)(JPR)

### 1.    The Settlement Is Non-Collusive and Was the Product of Extensive Negotiations.

The proposed Settlement was the product of arm's-length, hard-fought, non-collusive negotiations, including a failed full-day mediation with a highly experienced class action mediator followed by months of additional, and ultimately successful, negotiations. Schwartz Decl. ¶¶ 7, 9-10, 17; *see also Satchell v. Fed. Ex. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr.13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

Plaintiffs' Counsel litigated the case strenuously for over a year-and-a-half, filing a complaint (and First and Second Amended Complaints), successfully opposing a motion for protective order, defeating a motion requesting the Court to order arbitration on an individual basis, filing a class arbitration and three individual arbitrations, and preparing an extensive mediation statement. *See supra* § II; Schwartz Decl. ¶ 9.

Plaintiffs' Counsel believe the non-reversionary Settlement of $2.4 million for 158 Appraisers, plus the employer's share of payroll taxes, is an excellent result. Schwartz Decl. ¶¶ 2, 14, 17; Ho Decl. ¶ 5-7. In addition, Defendants have agreed to reclassify Appraiser I's.

Plaintiffs and the Class have been represented by experienced counsel, who have had numerous wage and hour class action settlements approved by federal and state courts and who have repeatedly been approved as Class Counsel. Schwartz Decl. ¶¶ 21-22; Ho Decl. ¶¶ 3-4 & Ex. 1. Counsel have fought for terms most advantageous to the entire class for the more than 18 months since this case was filed. Schwartz Decl. ¶¶ 7, 9-10, 14, 17. Among other advantageous terms, Counsel ensured that:  the settlement payment is non-reversionary (*i.e.*, maximizing the payments to all participating Class Members); Defendants will pay the employer's share of payroll taxes; all payments will be paid promptly; and payments will be made using an equitable distribution that fairly compensates California and non-California class members according to their length of service and average annual compensation during the Class Period, and on whether they possessed additional California claims. Schwartz Decl. ¶¶ 14, 17.

### 2. The Strength of Plaintiffs' Case Should Be Weighed Against the Risk, Expense, Complexity and Duration of Further Litigation, and the Risk of Achieving and Maintaining Class Action Status.

As discussed in Section III.B, *supra*, Plaintiffs believe the case has significant strengths, but that there are also considerable risks to further litigation and arbitration.

### 3. The Amount Offered in Settlement Weighs Strongly in Favor of Preliminary Approval.

The Settlement will provide Class Members with significant up-front payments and the benefit of reclassification for Appraiser I's. If all eligible Appraisers participate, the average payment per Class member will be approximately $9,500. *See* Schwartz Decl. ¶ 19. For those who worked the full Class Period, the payment will be significantly higher. Because the Settlement is non-reversionary, Defendants will actually be paying the full Settlement amount. The payments are reasonably based on the number of workweeks the Settlement Class Members were actively working for Defendants during the Class Periods and on their average compensation while in covered positions. As noted, Defendants will also pay their share of the payroll tax.

The settlement monetary relief compares favorably with the estimated full relief for the Class. As explained in in Counsel's declaration, the estimated value of the claims is approximately $9.3 million, before penalties and interest. *See* Schwartz Decl. ¶ 12 (explaining assumptions).[5] *Cf. Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 955 (9th Cir. 2009) (court may calculate settlement reasonableness without considering penalties). The $2.4 million recovered is thus estimated to be 26% of the total exposure

---

[5] The estimated full relief assumes a discount of 25% for non-California employees, given Defendants' anticipated argument that the "fluctuating workweek" doctrine limits the overtime rate to 0.5 times the regular rate. Schwartz Decl. ¶ 12. Recent decisions have rejected this argument (*e.g.*, *Wallace v. Countrywide Home Loans Inc.*, 2013 WL 1944458 (C.D. Cal. Apr. 29, 2013) (Staton, J.)), but some courts have accepted it. *See, e.g.*, *Roy v. Cnty. of Lexington, S.C.*, 141 F.3d 533, 547 (4th Cir. 1998).

16

– a strong result. *Cf. Ma*, 2014 WL 360196, at *2, 5 (settlement for 9.1% of total value was within the range of reasonableness).

California District Courts have lately approved numerous settlements in wage/hour class actions providing far less relief. On March 14, 2014, Judge Fischer of the Central District granted preliminary approval to a $5 million settlement for 22,000 Compass Group food service employees at Bon Appetit bakery, with a net settlement fund of $3,175,834, and with only a 25% guaranteed pay-out to claimants ($793,958.50 guaranteed for 1.6 million workweeks). *See Mojica v. Compass Group*, 13-cv-1754 (ECF No. 38) (C.D. Cal.) (Fisher, J.) (preliminary approval order submitted herewith as Exhibit B to the Schwartz Decl.). If *all* settlement class members participate in that case, the result will be $144.36 payments to each wage/hour class action member. *Id.*

In the Northern District of California, a court in February 2014 granted final approval to a settlement for $3 million for a class of 11,685 people – though the total exposure estimated for the case was $108 million, before penalties and interest. *See O'Sullivan v. AMN Services, Inc.*, 12-cv-2125 (ECF No. 92) (N.D. Cal.) (Spero, M.J.) (final approval order submitted herewith as Exhibit C to the Schwartz Decl.). The average payment to claimants there is $478.12 ($14.46/workweek). *Id.*

In a misclassification case with a larger class size, Judge Phillips of the Central District approved a $3.625 million settlement ($2.617 million net) for 313 FLSA class members and 174 California class members – yielding $5,374/per person on average. *See Carter*, 2010 WL 144067 (Phillips, J.).

On the other hand, settlements that have been disapproved are dramatically different from this one. In *Tijero v. Aaron Bros., Inc.*, 2013 WL 60464 (N.D. Cal. Jan. 2, 2013), the court rejected an $800,000 settlement for 6,500 class members which would have yielded a net payout of $1.54/workweek – less than $100/each for class members who worked an entire year. In *Lusby v. Gamestop Inc.*, 2013 WL 1210283 (N.D. Cal. Mar. 25, 2013), the rejected settlement would have been $750,000 for 13,872 people – $0.26/shift, after fees/costs, etc. were deducted.

17

### 4. Given the Stage of the Proceedings, Plaintiffs and Counsel are Well-Situated to Arrive at a Fair Settlement.

The Parties have briefed in detail the merits of this action in their mediation briefs, and have briefed to the Court their arguments on whether the "silent" arbitration agreements prohibit class arbitration. Schwartz Decl. ¶¶ 4, 9. The issue on appeal before the Ninth Circuit was fully briefed to this Court. *Id*. ¶ 4. In mediation, Plaintiffs submitted five detailed declarations describing the duties of Appraisers, the uniform manner in which they were paid, and the hours they worked. Defendants provided extensive information consisting of class-wide data sufficient to assess the reasonableness of the settlement amount. *Id.* ¶ 9. Plaintiffs' mediation briefing included hundreds of pages of exhibits detailing the duties of Appraisers, their job descriptions, and the policies they were required to follow. *Id.* The Parties are well-informed and prepared to reach this Settlement. *Id.*

### 5. The Considerable Experience and Strongly Supportive Views of Counsel Weigh in Favor of Preliminary Approval.

Counsel for Plaintiffs have represented thousands of employees in wage/hour class actions like this one, and have had settlements approved repeatedly by District Courts in the Ninth Circuit and other courts. Schwartz Decl. ¶ 21; Ho Decl. ¶ 3. Undersigned counsel have led the State Bar's Advanced Wage and Hour Seminar, the California Employment Lawyers Association Wage and Hour Conference, and have published many articles and spoken at numerous conferences regarding wage and hour class action settlements. Schwartz Decl. ¶ 21; Ho Decl. ¶ 4. In the view of counsel, this settlement is an exceptional result, both in terms of the monetary relief for class members, the reclassification, and the timing – approximately a year-and-a-half after suit was filed. Schwartz Decl. ¶ 2; Ho Decl. ¶¶ 5-7. Preliminary approval is merited.

### 6. All Additional Settlement Terms are Fair.

The Settlement avoids the pitfalls of other, unsuccessful settlements. Unlike in *Kakani v. Oracle Corp.*, 2007 WL 1793774 (N.D. Cal. June 19, 2007), no funds can revert to Defendants. *See La Parne v. Monex Deposit Co.*, 2010 WL 4916606 (C.D.

18

Cal. Nov. 29, 2010) (Carter, J.) (favoring non-reversionary settlement under similar circumstances). As described above, all workers' existing claims are extinguished only when they receive settlement checks, and class notices are provided to all settlement class members. Other than the three named Plaintiffs and the two opt-in plaintiffs for whom enhancements are sought, the Settlement Class Members are waiving only their wage and hour claims. In addition, Class Members do not waive their FLSA claims unless they opt into the suit by endorsing their Settlement check. *Cf. Kakani*, 2007 WL 1793774. Plaintiffs' Counsel solicited bids and selected reputable claims administrator CPT Group, Inc., which made the most competitive bid. Schwartz Decl. ¶ 25.

In addition to the already-discussed substantial monetary recovery envisioned under the Settlement and the significant benefit of the reclassification, settlement terms relating to the larger payment to California class members, the enhancement to the Class Representatives, attorneys' fees, and *cy pres* designees are fair and appropriate.

### a.    The larger allocation to California class members is fair.

Because the participating California Settlement Class Members possess, and will be required to waive, a broader range of claims, including meal- and rest-break claims, waiting time penalties, itemized wage statement penalties, and PAGA penalties, their *pro rata* settlement shares will be 1.64 times the size of the shares of Non-California Class Members. *See* Schwartz Decl. ¶ 13. This is equitable, because providing all Class Members with equal *pro rata* treatment would fail to account for valuable claims being waived by California Class Members. *Id.*; *see also Adlao v. JPMorgan Chase & Co.*, 10-cv-4508-SBA (N.D. Cal. May 2, 2012) (approving settlement with 1.64 multiplier for California class members) (attached as Schwartz Decl. Ex. D).

### b.    The proposed enhancement payments are fair.

The proposed enhancement payments totaling $45,000 for the three Class Representatives and the two Opt-in Plaintiffs are justified under the case law and the facts of this case. *See, e.g.*, *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003) (service awards to named plaintiffs in a class action are permissible and do not render a

19

settlement unfair or unreasonable); *Glass v. UBS Fin. Servs.*, Inc., 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) (approving payments of $25,000 to each named plaintiff); *Van Vranken v. Atlantic Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995) (awarding $50,000 to lead plaintiff). In *Van Vranken*, the court articulated the following factors to assess the appropriateness of an enhancement: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representatives; 3) the amount of time and effort spent by the class representatives; 4) the duration of the litigation, and; 5) the personal benefit (or lack thereof) enjoyed by the class representatives as a result of the litigation.  901 F. Supp. at 299. These factors support the requested enhancements here.

Each of the Representative Plaintiffs and the two opt-ins has risked his reputation and experienced "notoriety" as a result of bringing this case. As each individual testifies, the Appraiser community is tightly knit, and by placing himself in the spotlight, he has taken the risk that future employers will not hire him, or that Chase and other large mortgage sellers will not place him on their "fee appraisal panels," making it difficult to find work. *See* Third Decl. of Kenneth J. Lee, submitted herewith ("Third Lee Decl."); Third Decl. of Mark G. Thompson Decl., submitted herewith ("Third Thompson Decl."); Second Decl. of David C. Acree, submitted herewith ("Second Acree Decl."); Second Decl. of Myles Norton, submitted herewith ("Second Norton Decl."); Second Decl. of Joel Cuthbert, submitted herewith ("Second Cuthbert Decl."). The risk of blackballing in the appraisal industry weighs in favor of a significant service award. *See Rutti*, 2012 WL 3151077, at *5 (citing research, noting the "strong disincentives for employees to participate in a class action against their current or former employer"). In addition, Plaintiffs Lee, Thompson, and Acree were named, personally, as Defendants in counterclaims brought by Defendants. *See* ECF No. 44; Schwartz Decl. ¶ 20. Additional rationales for the requested enhancements are:

Kenneth J. Lee – requested enhancement of $15,000. Mr. Lee has taken on the greatest risk for the Class. He initiated this case and spent more time than any plaintiff

assisting counsel in understanding the facts and describing Appraiser duties accurately. *See* Third Lee Decl. ¶¶ 2, 5. He has reviewed briefing and pleadings, and submitted three declarations. *Id.* ¶ 5. He has twice flown from Southern California to Northern California, paying travel expenses out of pocket. *Id.* He attended a full day of mediation, and reviewed and assisted in revising the mediation brief. *Id.* Mr. Lee has spent approximately 250 hours and $700 on this case, and has lost significant earnings as a result of the time he has devoted to the case. *Id.* He has been rejected from fee appraisal work and had colleagues refuse to speak to him as a result of this suit. *Id.* ¶ 4.

Mark G. Thompson – requested enhancement of $10,000. Mr. Thompson is the only Review Appraiser representative. He has provided extensive assistance in understanding the duties of Review Appraisers. *See* Third Thompson Decl. ¶ 4. He has reviewed briefing throughout the case to assist Plaintiffs' counsel. *Id.* Mr. Thompson, along with Mr. Lee, was one of the two Class Representatives named on the initial complaint. He has submitted three declarations, including in support of conditional certification, and in opposition compelled arbitration. *Id.* Mr. Thompson flew from Southern California to San Francisco, paying his expenses, to attend mediation. *Id.* He reviewed, commented on and assisted in revising Plaintiffs' mediation brief. *Id.* He has spent approximately 95 hours and $1000 pursuing the interests of the Class. *Id.*[6]

David C. Acree – requested enhancement of $10,000. Mr. Acree joined as a Representative Plaintiff in July 2013. He has submitted two declarations. *See* Second Acree Decl. ¶ 4. *Id.* He flew to San Francisco, paying his expenses, to attend mediation. *Id.* He has spoken with Plaintiffs' counsel at length to assist with the case. *Id.* He has

---

[6]   Mr. Thompson's release includes an exception for individual claims for wrongful termination and discrimination that he filed against Defendants in state court, and that Defendants then removed to this Court. *See* Case No. 14-cv-1181-JLS-JPR.

MEM. OF PTS. & AUTHS. IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT; 13-CV-00511 (JLS)(JPR)

spent 80 hours and $885 on the case, and used vacation time to participate. *Id.* As a current employee, he has experienced significant fear of retaliation. *Id.* ¶¶ 7-8.

Myles Norton and Joel Cuthbert – requested enhancements of $5,000 each. Messrs. Cuthbert and Norton opted into the case in April and November, 2013, respectively. Each spent considerable time speaking with Plaintiffs' counsel, and each submitted a declaration in support of the mediation brief. Second Cuthbert Decl. ¶ 4; Second Norton Decl. ¶ 4. These declarations helped establish that Defendants' practices and Appraisers' duties are uniform nationwide. *See* Schwartz Decl. ¶ 20. Mr. Norton, as an employee until recently, experienced stress about retaliation from his supervisors since he stepped forward to join the case. *See* Second Norton Decl. ¶ 6. He has spent 40 hours on this case. *Id.* An enhancement for Mr. Cuthbert is merited because he worked for a relatively short period of time, and the pro rata payment he will receive in the Settlement does not compensate him for his service to the Class. *See* Schwartz Decl. ¶ 20. He has spent 40 hours on this case. *See* Second Cuthbert Decl. ¶ 4.

In addition, the Plaintiffs for whom enhancements are requested will execute broad waivers, warranting additional compensation. Exh. A § 1.19. Perhaps most significantly, because they are settling as part of the Class and representing it, instead of litigating their claims individually, they are accepting only a fraction of what they sought to recover litigating individually. Schwartz Decl. ¶ 20. This sacrifice for the absent class members requires compensation. *Id.*

Undersigned counsel believes the above amounts are the minimum that would viably promote the public policy interest in encouraging those with wage claims to assert them despite the fears associated with doing so. Schwartz Decl. ¶ 21.

### c.    Attorneys' Fees of One Third of the Common Fund Are Justified.

Defendants have agreed not to oppose a request for attorneys' fees of one-third of the Settlement Amount of $2,400,000. Exh. A § 2.9.1. "[A] litigant or a lawyer who recovers a common fund … is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Staton*, 327 F.3d

22

at 967 (same). The Ninth Circuit's benchmark for fees in this context is 25 percent of the gross settlement amount. *Glass*, 2007 WL 221862, at *14. Here, Plaintiffs' counsel's request for an upward departure to 33.3 percent (one-third) of the common fund (a fee of $800,000) is justified because of the outstanding monetary result, the non-reversionary nature of the settlement, and the injunctive relief component of the settlement, which is not accounted for in the common fund. *See Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 922-23 (9th Cir. 2014) (approving fee larger than settlement itself, noting that when injunctive relief was taken into account, the fees as a percentage of the recovery were reasonable). Courts consider not only the results achieved and the quality of work – which Plaintiffs submit are high on all counts – but also the risk of litigation, the contingent nature of the fee and the financial burden carried by the Plaintiffs. *See, e.g.*, *In re Omnivision Techs., Inc.*, 2007 WL 4293467, at *9 (N.D. Cal. 2007) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)). Because many of the class members likely never would have recovered anything due to their arbitration agreements, which would have required them to litigate individually, this Settlement is an exceptional result. The choice of "the benchmark or any other rate must be supported by findings that take into account all of the circumstances." *Vizcaino*, 290 F.3d at 1048; *id.* at 1050 n.5 ("[C]lass counsel should [not] necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members….").

Compensation merely at the benchmark would undercompensate counsel, in light of the projected monetary value of the reforms not accounted for in the $2.4 million common fund. Awarding an upward departure from the benchmark of 25 percent in a common fund case is particularly appropriate when the benefits to the class are not limited to the fund itself. *See In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *Laguna*, 753 F.3d at 922-23. "Non-monetary benefits" to the Class, such as causing the defendant "to change its personnel classification practices," are "a relevant circumstance" in the fee analysis. *Vizcaino*, 290 F.3d at 1049.

Plaintiffs' Counsel have expended approximately 1500 hours litigating this matter, with a risk of no recovery. *See* Schwartz Decl. ¶ 18 (including an estimated 200 additional hours for the work required to oversee the provision of notice to the Class, the motions for attorneys' fees and final approval, and related work); Ho Decl. ¶ 9. Their lodestar is approximately $625,000. *Id.* As such, Plaintiffs' fee request would represent only a modest 1.28 multiplier upon their anticipated lodestar. With their fee petition, Plaintiffs' Counsel will provide a detailed breakdown of their hours worked and fees incurred for a lodestar cross-check. In light of *In re Bluetooth Headset*, 654 F.3d at 943, 947-50, Plaintiffs will make their fee petition public more than 15 days in advance of the final approval hearing. *See* [Proposed] Order, submitted herewith.

### d.    The Notice to the Class Is Sufficient.

The proposed Class Notices to the California and Non-California Settlement Classes, and the proposed method of distribution, are appropriate. *See* Fed. R. Civ. P. 23(c)(2)(B); *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The proposed form of notice will be sent via first-class mail to the last known mailing address of each Class Member and prior to mailing the Class Notices, the Claims Administrator will consult the U.S. Postal Service's National Change of Address Database (or similar customarily used search method) to review the accuracy of and, if possible, update a Class Member's mailing address. Exh. A § 1.3.2. The Class Notice (Exh. A at Ex. 1) provides case and settlement details and the specific options available to Class Members so they can make an informed decision. *See supra* § III.A.2.

### e.    The Requested *Cy Pres* Beneficiaries Are Appropriate.

Under *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2013), "to avoid the many nascent dangers to the fairness of the distribution process," the Ninth Circuit requires "that there be a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Id.* Here, there is. This is a workers' rights suit seeking to enforce wage laws in California. The Legal Aid Society–Employment Law Center (www.las-elc.org) is the leading provider of legal services for low-wage workers in California, and will

24

MEM. OF PTS. & AUTHS. IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT; 13-CV-00511 (JLS)(JPR)

receive half of the *cy pres* proceeds. The Juvenile Advocacy Project, Mental Health Advocacy Services, is slated to receive the other half of the *cy pres* proceeds.

### D.     The FLSA Settlement Should Be Approved as Fair and Reasonable.

The FLSA was enacted to protect workers from the poor wages and oppressive hours than can result from unequal bargaining power with employers. *See Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 739 (1981). When an employee brings a private action for wages under 29 U.S.C. § 216(b), the parties must present any proposed settlement for approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982). If the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions," a stipulated judgment is appropriate. *Id*. at 1355.

Settlements of FLSA claims are permissible because initiation of the action "provides some assurance of an adversarial context." *Lynn's Food Stores*, 679 F.2d at 1354. In such instances, the employees are likely to be represented by an attorney who can protect their rights, and thus, "the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." *Id*. If the settlement reflects a reasonable compromise over issues that are actually in dispute, approval is permissible. *Id*.

This Settlement of FLSA claims is fair and reasonable and should be approved.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs submit that the settlement is fair, adequate and reasonable, and in the best interests of Plaintiffs and the Class. Under the applicable class and collective action standards, Plaintiffs request that: this unopposed motion be granted; the Settlement be preliminarily approved; the class of commercial real estate Appraisers described herein be certified for settlement purposes; Bryan Schwartz Law and Goldstein Borgen Dardarian & Ho be named as Class Counsel; Kenneth Lee, Mark Thompson and David Acree be named as Class Representatives; CPT Group, Inc. be named as Claims Administrator; mailing of the Notice to the Class be authorized; and a final approval hearing date be scheduled. A Proposed Order is submitted herewith.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED: October 10, 2014

BRYAN SCHWARTZ LAW
GOLDSTEIN BORGEN DARDARIAN &
HO, LLP

By: _/s/ *Bryan J. Schwartz*_____
Bryan J. Schwartz (SBN 209903)
Attorneys for Plaintiffs

26