1
2
3
4
5
6
7

8                      UNITED STATES DISTRICT COURT

9                      CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  KENNETH J. LEE, MARK G.<br>12  THOMPSON, and DAVID C. ACREE,<br>13  individually, on behalf of others similarly<br>     situated, and on behalf of the general public,<br>14<br>              Plaintiffs,<br>15<br>16        vs.<br>17  JPMORGAN CHASE & CO.; JPMORGAN<br>18  CHASE BANK, NATIONAL<br>     ASSOCIATION; and DOES 1-10, inclusive,<br>19<br>20            Defendants. | CASE NO. SACV 13-511-JLS (JPRx)<br><br>**ORDER GRANTING PLAINTIFFS'<br>UNOPPOSED MOTION FOR FINAL<br>APPROVAL OF CLASS ACTION<br>SETTLEMENT (Doc. 91) AND<br>PLAINTIFFS' MOTION FOR<br>ATTORNEYS' FEES, COSTS AND<br>CLASS REPRESENTATIVES' AND<br>OPT-INS' ENHANCEMENTS (Doc. 81)** |

21
22
23
24
25
26
27
28

Before the Court is Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement.  (Final Approval Mot., Doc. 91.)  Also before the Court is Plaintiffs' Motion for Attorneys' Fees, Costs and Class Representatives' and Opt-Ins' Enhancements.  (Attorneys' Fees Mot., Doc. 81.)  Having reviewed the papers, held a fairness hearing, and taken the matter under submission, the Court GRANTS Plaintiffs' Motions.

## I.    BACKGROUND

On March 29, 2013, Plaintiffs Kenneth Lee and Mark Thompson filed a Class and Collective Action Complaint against Defendants, alleging JPMorgan Chase violated California and federal statutory wage laws and engaged in unfair competition in violation of California Business and Professions Code § 17200 *et seq.*  (Compl., Doc. 1.)  According to the Complaint, JPMorgan Chase misclassified Plaintiffs and putative class members who were or are commercial and review appraisers as exempt employees under federal and California wage and hour laws. (Id. ¶¶ 1, 39-68.)  Specifically, Plaintiffs allege that Defendants misrepresented to these employees that they were exempt and therefore were not entitled to overtime pay for hours worked in excess of forty hours a week.  (Id. ¶ 19.)  On April 5, 2013, Joel Cuthbert filed a written consent to join the collective action.  (Settlement Agreement, Doc. 68-1, Ex. A, at 2.)  On May 1, 2013, Plaintiffs filed a First Amended Complaint ("FAC"), adding claims for waiting time penalties under California Labor Code § 203 and civil penalties under the Private Attorneys General Act of 2004, Cal. Labor Code § 2698, *et seq.* ("PAGA").  (FAC, Doc. 10.)

On July 2, 2013, Plaintiffs filed their Second Amended Complaint ("SAC"), which also added David C. Acree as a class representative Plaintiff.  (SAC, Doc. 38.).  The SAC defines the Collective Class as:

> All persons who are or have been employed by Defendants as a
> commercial production appraiser ("Appraiser I;" Appraiser II;" "Senior
> Appraiser;" or positions consisting of similar job duties) in the CTL
> Appraisal division within the United States at any time from three years
> prior to the filing of this Complaint to the final disposition of this case.

(Id. ¶ 18.)  The SAC defines the California Class similarly as:

> All persons who are or have been employed by Defendants as
> Appraisers in the CTL Appraisal division (including production
> appraisers and review appraisers, with such titles as "Appraiser I;"
> "Appraiser II;" "Senior Appraiser"; "Review Appraiser;" "Senior
> Review Appraiser;" and any other position consisting of similar duties)
> within the State of California at any time from four years prior to the
> filing of this Complaint to the final disposition of this case.

(Id. ¶ 32.)  The proposed California Class includes two sub-classes for related penalty claims.  (Id. ¶¶ 33-34.)

On August 14, 2013, the parties stipulated to dismiss Plaintiffs' claims and compel arbitration.  (Stip., Doc. 46.)  Plaintiffs and putative class members had signed arbitration agreements with Defendants for claims related to their employment.  Some of the agreements explicitly required arbitration on an individual basis, others were silent on the question of class arbitration, and 21 putative class members had not signed arbitration agreements at all.  (Preliminary Approval Order at 3, Doc. 80.)  On November 4, 2013, while this Court was considering whether the Court or an arbitrator should decide whether the agreements without express class waivers allowed arbitration to proceed on a class basis, Myles Norton filed a written consent to join the collective action.  (Settlement Agreement at 3.)  On November 14, 2013, this Court held that an arbitrator should decide

1   whether the agreements prohibit class arbitration, and thus dismissed the action.
2   (Order at 8, Doc. 63.)

3           Defendants appealed this ruling to the Ninth Circuit.  (Notice of Appeal, Doc.
4   64.)  Meanwhile, Plaintiffs filed demands to arbitrate their claims on either an
5   individual or class-wide basis before the American Arbitration Association
6   ("AAA"), depending on which arbitration agreement each Plaintiff had signed.
7   (Settlement Agreement at 3.)

8           On June 17, 2014, the parties participated in a mediation session before wage
9   and hour mediator Michael Dickstein.  (Amended Schwartz Decl. ¶ 9, Doc. 75-1.)
10  The original mediation session did not immediately result in a settlement, but the
11  parties and mediator Dickstein conducted several follow-up conferences over the
12  next several weeks.  (Id. ¶¶ 9-10; Settlement Agreement at 5, n. 1.)  On October 10,
13  2014, the parties finally executed the Settlement Agreement (Amended Schwartz
14  Decl. ¶ 10), and Plaintiffs filed an Unopposed Motion for Preliminary Approval of
15  Class Action Settlement.  (Preliminary Approval Mot., Doc. 67.)

16          The Settlement Agreement defines "Covered Positions" as "the following
17  positions in JPMorgan Chase's CTL division that current and former employees
18  who are covered by this Stipulation held: Appraiser I; Appraiser II; Senior
19  Appraiser; Commercial Appraiser – Team Lead Commercial Production Appraiser;
20  Senior Commercial Review Appraiser; Review Appraiser; and Senior Review
21  Appraiser."  (Id. § 1.11.)  The Settlement Agreement further provides that "[f]or a
22  position to be a Covered Position, an employee must have worked in that position:
23  (a) at any time from March 29, 2010 through the Preliminary Approval Date in any
24  state other than California, and/or (b) at any time from March 29, 2009 through the
25  Preliminary Approval Date in California."  (Id.)

26          The Settlement Agreement provides for a settlement fund not to exceed the
27  gross sum of $2,400,000.00.  (Id. § 1.37.)  No portion of the settlement fund will

28

revert back to Defendants unless the Settlement fails or more than 5% of the California Class opts out. (Id. §§ 2.2.1, 2.11.1.) In addition to the settlement fund, Defendants agree to pay each Participating Claimant's share of payroll taxes for the share of his or her settlement payment deemed to be wages. (Id. § 2.2.1.)

The settlement fund will be used to pay for (1) Plaintiffs' attorneys' fees and costs, (2) reimbursement for actual litigation costs (not to exceed $25,000), (3) enhancement payments for the three named Plaintiffs and the two representatives who filed written consents to join the class action, (4) a payment of $7,500 to the California Labor Workforce Development Agency ("LWDA") for the PAGA claims, and (5) settlement administration expenses. (Id. §§ 2.2.6, 2.5.6, 2.9.1, 2.9.2.) More specifically, the Settlement Agreement allows Plaintiffs' counsel to apply for an award of one-third of the $2,400,000.00 ($800,000.00) as attorneys' fees. (Id. § 2.9.1.) In the event that this Court awards less than the one-third amount requested for attorneys' fees and/or costs, any amount not awarded will be distributed to the putative class members, with no portion reverting back to Defendants. (Id. § 2.9.1.) The Settlement Agreement also allocates enhancement payments, totaling $45,000.00, to the Plaintiffs as follows: $15,000.00 to Kenneth Lee, $10,000.00 to Mark Thompson, $10,000.00 to David Acree, $5,000.00 to Joel Cuthbert, and $5,000.00 to Myles Norton. (Id. § 2.9.2.) Expenses paid to the claims administrator are not to exceed $20,000.00. (Amended Schwartz Decl. ¶ 19.) The remainder of the settlement fund will be distributed to Class Members and no funds will revert to Defendants. (Settlement Agreement §§ 1.1, 1.21, 1.37, 2.2.1.)

Participating Claimants will be allocated a share of the settlement fund based on the number of workweeks they worked for Defendants during the relevant time period. (Id. § 2.2.2.) For those in the California Class, a 1.64 multiplier will be used to provide them with a larger pro rata share per workweek, as a result of the release of their additional claims for meal/rest period violations, PAGA penalties,

1  waiting time violations, and wage statement violations under California law.  (Id.)

2  If fewer than all of the putative class members participate in the settlement

3  distribution, the settlement payment to any Participating Claimant will increase on a

4  pro rata basis, subject to the limitation that no Participating Claimant will be paid

5  greater than twice the initial amount calculated to be paid to that Participating

6  Claimant.  (Id.)  Any additional funds that cannot be paid to the Participating

7  Claimants due to the above restriction will be distributed by *cy pres* to the Legal Aid

8  Society – Employment Law Center.  (Id.; Preliminary Approval Order at 22, Doc.

9  80; Final Approval Mot. at 4; Schwartz Approval Decl. ¶ 17, Doc. 91-2.)

10       In addition to the monetary benefits of the Settlement Agreement, the

11  Commercial Appraiser I position at JPMorgan Chase will be reclassified as non-

12  exempt, allowing employees in that position in the future to be compensated for

13  their overtime and, in California, any missed meal/rest periods.  (Settlement

14  § 2.12.6.)

15       In return for a share of the settlement fund and enhancement payments,

16  Plaintiffs agree to release any and all claims and causes of actions against

17  Defendants, "whether or not acting in the course and scope of employment…."[1]  (Id.

18  § 1.9.)  The other Class Members agree to release "any and all federal wage and

19  hour law claims . . . that accrued on any date up through and including . . . final

20  approval of the Settlement, for any type of relief . . . arising under the Fair Labor

21  Standards Act of 1938 ("FLSA")."  (Id. § 1.33.)  As to state law claims, Class

22  Members similarly agree to release any and all wage and hour claims they may have

23  against Defendants under the relevant California laws for Class Members in

24  Covered Positions.  (Id. § 1.34.)  As a result, only the Plaintiffs receiving

25  

26  
27  [1] The parties have stipulated that nothing in the Settlement Agreement releases Plaintiff Thompson's separate claims as set forth in the individual complaint he filed against Defendants in this Court in Case No. SACV 14-01181 JLS (JPRx). (Settlement Agreement at 7 n. 2.)

28

1   enhancement payments are required to execute a general release of *all* claims

2   against Defendants existing up to the date of final approval.

3        Class Members who opt-in or, if they are in California, do not opt-out of the

4   Settlement will have 180 days to cash their settlement checks. (Id. § 2.6.4.) Any

5   amounts represented by uncashed checks will be distributed to the other

6   Participating Claimants on a pro rata basis, and any funds left over after that

7   redistribution will be distributed by *cy pres*, as discussed above. (Id. § 2.12.1.) The

8   back of the settlement check will have an endorsement that the Participating

9   Claimant must sign to release their federal and state law claims, as defined above,

10   and to receive his or her portion of the settlement fund. (Id. § 1.38.)

11        The Court granted Plaintiffs' motion for preliminary approval on November

12   13, 2014. (Doc. 78.) On November 21, 2014, Class Counsel filed a Revised Class

13   Notice pursuant to the Court's Order. (Revised Class Notice, Ex. A., Doc. 79.) The

14   Court issued an Amended Preliminary Approval Order on November 24, 2014.

15   (Preliminary Approval Order, Doc. 80.)

16        On October 20, 2014, Defendants mailed CAFA Notices to the relevant

17   authorities. (Schwartz Approval Decl. ¶ 11; Final Approval Mot. at 7.) On

18   December 18, 2014, the parties' Claims Administrator, CPT Group, Inc., issued

19   notice to the Class pursuant to the terms of the Settlement Agreement. (Shirinian

20   Decl. ¶ 7, Doc. 91-4; Shirinian Decl., Ex. A, Doc. 91-4.) Four Notice Packets were

21   re-mailed by CPT either because Class Members requested the Notice packet to be

22   re-mailed or because CPT was provided with a new address. (Shirinian Decl. ¶ 9.)

23   As of March 5, 2015, no Notice Packets have been returned to CPT as

24   undeliverable. (Id. ¶¶ 8, 11.) CPT has not received any requests for exclusion. (Id.

25   ¶¶ 12, 18.) Further, there are no outstanding disputes regarding calculated work

26   weeks for the estimated awards and no deficient, invalid, or late responses. (Id. ¶¶

27

28

13-16.)  Finally, no objections to the Settlement have been filed by any of the 162 Class Members.  (Id. ¶¶ 17-18.)

Pursuant to the Settlement Agreement, on February 2, 2015, Class Counsel moved for attorneys' fees, costs, and enhancement payments.  (Attorneys' Fees Mot.)  On March 6, 2015, Plaintiffs filed their Unopposed Motion for Final Approval of Class Action Settlement.  (Final Approval Mot.)

## II.  FINAL APPROVAL OF SETTLEMENT

Rule 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  To determine whether a settlement agreement is fair, reasonable, and adequate, "a district court must [ultimately] consider a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant;[2] and (8) the reaction of the class members to the proposed settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted).  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety."  *Staton*, 327 F.3d at

---

[2] This factor does not apply in the case.

960 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

The Court finds the factors listed above favor final approval of the Settlement.

**A. Strength of Plaintiffs' Case**

Plaintiffs maintain that they have a strong case and would likely prevail at trial, but "recognize that they face several significant risks with continued litigation." (Final Approval Mot. at 9.)  Plaintiffs note that "[n]o Ninth Circuit authority determines Appraisers' classification expressly," "[a]ll but approximately 25 of the 162 Appraisers signed arbitration agreements, at least 99 of which included explicit class waivers," and "Plaintiffs further faced a risk of being unable to certify a class and collective action due to Defendants' arguments that: (1) no two Appraisers do their job exactly the same; (2) the potentially significant size of each Class Member's full claim militates against a showing of superiority; (3) each claimant may seek to prove different types of damages . . .; and (4) [] Defendants' purported Due Process right to cross-examine each Class Member on job duties and to challenge his or her claimed hours necessitates mini-trials." (Id.)  As a result, Plaintiffs argue that there are significant risks of losing on the merits at trial, that the Court will find a class action inefficient, and that at least 99 Class Members would be required to prosecute individual arbitrations without a settlement. (Id. at 9-10.)  Further, Plaintiffs contend that they face "the risk of being unable to establish that Defendants' violation of the labor laws was 'willful' under the FLSA or that Defendants did not have a good faith defense to Plaintiffs' Labor Code Section 203 and 226 claims." (Id. at 10.)  Finally, Plaintiffs argue that "Defendants' pending appeal, which challenges the Court's ruling that the arbitrator should decide whether the arbitration agreements permit class-wide arbitration, would result in further delay and increased risk and expenses from litigating either individual or class arbitrations." (Id.)  The Court therefore concludes that this factor weighs in favor of

1  granting final approval.

2

3      **B. Complexity and Expense of Further Litigation**

4          This action settled after 18 months of litigation.  Plaintiff notes that if this

5  action proceeds, "[c]ontinued litigation would be both expensive and time

6  consuming; whereas this Settlement will result in payment within months.  (Id.)  As

7  detailed above, Defendants' have appealed the Court's prior ruling regarding

8  whether the arbitrator or Court should decide whether the arbitration agreements

9  permit class-wide arbitration.  As a result, without settlement, Plaintiffs would likely

10 have to continue litigation in this Court, the Ninth Circuit, and before arbitrators, on

11 potentially both an individual and class-wide basis.  (Id.)  Given the risks inherent in

12 the class certification process and trial discussed above, the Class could recover

13 nothing from these extensive additional proceedings.  Undoubtedly, the expenses

14 incurred by the class will increase as the case progresses.  The Court therefore finds

15 that this factor favors approving the Settlement.

16

17     **C. Risk of Maintaining Class Action Status through Trial**

18         As discussed above, this Court previously determined that the arbitrator

19 would determine whether class-wide arbitration is available when an arbitration

20 agreement is silent on that point.  An appeal of this decision was pending in the

21 Ninth Circuit prior to settlement.  Therefore, there is some risk of maintaining class

22 certification depending on how the Ninth Circuit and/or the arbitrator determine this

23 issue.  The risk that Plaintiffs would be unable to certify a class should the action

24 proceed in litigation favors approving the Settlement.

25

26     **D. Amount Offered in Settlement**

27         The Court finds that the amount offered in settlement is reasonable.  The

28

Settlement Agreement provides for a settlement fund of $2,400,000.00. (Settlement Agreement § 1.37.) No portion of the settlement fund will revert back to Defendants because no Class Member has filed a request for exclusion. (Id. §§ 2.2.1, 2.11.1.)

Defendants have agreed to pay each Participating Claimant's share of payroll taxes for the share of his or her settlement payment deemed to be wages. (Id. § 2.2.1.) Class Counsel has applied for $800,000 in attorneys' fees and $18,000[3] in costs. (Attorney's Fees Mot. at 1; Final Approval Mot. at 19.) The three named Plaintiffs and the two representatives who filed written consents to join the class action request a total of $45,000 in enhancement payments. (Attorneys' Fees Mot. at 15-20.) $7,500 will be paid to the LWDA for the PAGA claims. (Settlement Agreement §§ 2.2.6, 2.9.1.) Finally, CPT has requested $20,000 in settlement administration expenses. (Shirinian Decl. ¶ 20.) The remainder of the settlement fund will be distributed to Class Members and any additional funds that cannot be paid to the Participating Claimants will be distributed by *cy pres* to the Legal Aid Society – Employment Law Center. (Final Approval Mot. at 5.)

With the deductions listed above and the establishment of a "reserve fund" to resolve disputes, Plaintiffs estimate that a total of $1,472,500 will be distributed to Participating Claimants. (Suppl. Shirinian Decl. ¶ 3, Doc. 93.) "[T]he average settlement payment per Participating Class Member is estimated at $9,089.51. The highest estimated settlement payment is $25,160.84, while the lowest estimated payment is $54.41, for a person who had only ten days of employment in a relevant position during the class period." (Id.; *see also* Suppl. Schwartz Decl. ¶ 3, Doc. 92.) Finally, the Commercial Appraiser I position at JPMorgan Chase will be reclassified

---

[3] On February 2, 2015, Plaintiffs' moved for up to $25,000 for actual litigation costs in their Attorneys' Fees Motion. (Attorneys' Fees Mot. at 1.) However, when moving for final approval, Plaintiffs clarified that they are seeking only $18,000 in costs. (Final Approval Mot. at 19.)

1  as non-exempt, allowing employees in that position in the future to be compensated

2  for their overtime and, in California, any missed meal/rest periods.  (Id. § 2.12.6.)

3  The Settlement therefore offers a substantial benefit to the Class in terms of both

4  significant settlement payments and meaningful prospective relief.  (*See* Final

5  Approval Mot. at 11.)

6       Considering the difficulties, uncertainty, and likely length of the proceedings

7  in this case before any recovery could be obtained, the Court finds that this factor

8  weighs in favor of granting final approval.

9

10      **E. Stage of the Proceedings**

11      This factor requires the Court to evaluate whether "the parties have sufficient

12  information to make an informed decision about settlement."  *Linney v. Cellular*

13  *Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  While extensive formal

14  discovery has not been completed in this case, Plaintiff contends that during that

15  time the parties "briefed in detail the merits of this action in their mediation briefs,

16  have briefed to the Court their arguments on whether the 'silent' arbitration

17  agreements prohibit class arbitration, and appealed and fully briefed this Court's

18  ruling to the Ninth Circuit." (Final Approval Mot. at 13.)  Further, Plaintiffs assert

19  that they "also submitted several declarations and hundreds of pages of exhibits

20  detailing the duties of Appraisers and the policies they were required to follow."

21  (Id.)  Finally, prior to mediation, Plaintiffs conducted "extensive analysis of class-

22  wide damages data to enable the parties to assess the reasonableness of the

23  Settlement amount."  (Id.)  Class Counsel represents that the information exchanged

24  was sufficient to allow Plaintiffs to properly evaluate the case.  (Id.)

25      The Court recognizes that settlement occurred before class certification.

26  However, the parties have shown that they have spent significant time investigating

27  this action to allow for an informed decision, but not so much time that the

28

settlement amount will be unnecessarily depleted by extensive costs and fees.  The Court therefore finds that the parties have sufficient information to make an informed decision about settlement.  As such, the Court finds that this factor favors approving the Settlement.

### F.  Absence of Collusion

The Court finds no signs, explicit or subtle, of collusion between the parties. The requested award of $800,000 in attorneys' fees and $18,000 in costs, which is authorized by the Settlement Agreement, is not disproportionate to the benefits that have inured to the class as a result of this action.  The same is true with respect to the $45,000 in enhancement payments Plaintiffs seek under the Settlement. Moreover, this Settlement is the result of a mediation held before wage and hour mediator Michael Dickstein.  The mediator's involvement in the Settlement is an additional factor that supports the argument that it is non-collusive.  *See Satchell v. Fed. Express Corp.*, No. C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

Accordingly, the Court is satisfied that the Settlement is the result of arms-length, non-collusive, and informed negotiations.

### G. Experience and Views of Counsel

Class Counsel, who have prior experience litigating class action lawsuits (*see* Schwartz Fee Decl. ¶¶ 10-14, Doc. 82; Ho Fee Decl. ¶¶ 3-6, Doc. 83.), have endorsed the Settlement as fair, reasonable, and adequate.  (Schwartz Fee Decl. ¶ 3; Ho Fee Decl. ¶¶ 8-10.)  "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quotation marks omitted).  Accordingly, this factor favors approving the Settlement.

1

2         **H. Reaction of Class Members to Proposed Settlement**

3         Notice was sent to all Class Members pursuant to the Court's Preliminary

4 Approval Order.  (Shirinian Decl. ¶ 7.)  The deadline for opt-outs and objections has

5 passed, and no exclusion requests or objections to the Settlement have been

6 received.  (Id. ¶¶ 12, 17-18.)  "[T]he absence of a large number of objections to a

7 proposed class action settlement raises a strong presumption that the terms of a

8 proposed class settlement action are favorable to the class members."  *Nat'l Rural*

9 *Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).

10 Accordingly, the Court finds this factor weighs in favor of granting final approval.

11         Having considered the foregoing factors, the Court finds the proposed

12 Settlement is fair, reasonable, and adequate.

13

14 **III.    ATTORNEYS' FEES**

15         Class Counsel seeks an award of attorneys' fees of $800,000, which is one-

16 third of the settlement fund.  (Attorneys' Fees Mot. at 1.)

17         Rule 23 permits a court to award "reasonable attorneys' fees . . . that are

18 authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  "[C]ourts

19 have an independent obligation to ensure that the award, like the settlement itself, is

20 reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth*

21 *Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  In the Ninth Circuit,

22 the benchmark for a fee award in a common fund case is 25% of the recovery

23 obtained.  *Id.* at 942.  The Ninth Circuit has identified a number of factors the Court

24 may consider in assessing whether an award is reasonable and whether a departure

25 from that figure is warranted, including: (1) the results achieved; (2) the risk of

26 litigation; (3) the skill required and quality of the work; and (4) the contingent

27 nature of the fee and the financial burden carried by the plaintiffs.  *Vizcaino v.*

28

*Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).  The Court will consider each in turn.

### A.    Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award."  *In re Omnivision Techs, Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citation omitted).  Here, a $2,400,000 settlement fund was created for Class Members.  After subtracting the authorized and requested fees and costs, $1,472,500 will be distributed to the 162 Participating Claimants, with each Class Member receiving cash payments ranging from $54.41 to $25,160.84, with an average settlement payment of $9,089.51.  (Suppl. Shirinian Decl.¶ 3; Suppl. Schwartz Decl. ¶ 3, Doc. 92; Attorneys' Fees Mot. at 7-8.) Moreover, the fact that no Class Member opted-out and no Class Member objected further supports the conclusion that Class Counsel achieved an exceptional result on behalf of the class.

Thus, this factor weighs in favor of granting the requested fee award.

### B.    Risk of Litigation

The risk of litigation further supports this award.  As discussed above, Plaintiffs face numerous risks if the case were to proceed further in litigation. Plaintiffs note that "[t]here is no Ninth Circuit authority on point regarding Appraisers' classification" and "[a]ll but approximately 25 of the 162 Appraisers signed arbitration agreements, at least 99 of which included explicit class waivers." (Attorneys' Fees Mot. at 9.)  Further, Defendants have made numerous arguments in opposition to Plaintiffs efforts to certify the class and maintain the case as a collective action.  (Id.)  Plaintiffs also recognize that they "faced the risk of being unable to establish that Defendants' violation of the labor laws was 'willful' under

the FLSA." (Id.) If Defendants were to succeed in opposing class certification or prevailing at trial, Class Members could receive no recovery, and additional resources would be spent by the parties.

The Court finds the risk that further litigation might result in Plaintiffs and Class Members not recovering anything weighs in favor of granting the requested fee award. *See Omnivision*, 559 F. Supp. 2d at 1047.

## C.    Skill Required and Quality of Work

Class counsel has expended approximately 1500 hours on this case since it began on March 29, 2013. (Attorneys' Fees Mot. at 10; Schwartz Approval Decl. ¶ 13; Schwartz Approval Decl., Ex. 1, Doc. 91-2; Ho Approval Decl. ¶ 8; Ho Approval Decl. Ex. 1, Doc. 91-3.) Class Counsel "investigated and filed the complaint; successfully resisted a motion for a protective order that sought to prohibit communications with the Class; successfully resisted Defendants' motion requesting the Court to rule that arbitration would be permitted on an individual-only basis; prepared and filed a class arbitration and three individual arbitration; engaged in mediation and extensively brief the merits of the claims . . .; and overs[aw the] drafting and provision of notice to the Class." (Attorneys' Fees Mot. at 2-3; *see also* Schwartz Fee Decl. ¶ 5.) This effort over the course of over two years, coupled with Class Counsel's skillful work to negotiate a settlement in which Class Members will recover both monetary and prospective relief, weighs in favor of awarding the requested fee.

## D.    Contingent Nature of the Fee

Class Counsel took this case on a contingent basis and has litigated it for over two years. (Attorneys' Fees Mot. at 11; Schwartz Fee Decl. ¶ 7, Schwartz Fee Decl., Ex. B, Doc. 82.) Courts have recognized that the public interest is served by

rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing for their work.  *See In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994); *Vizcaino*, 290 F.3d at 1050.  Moreover, Class Counsel's commitment of resources and the expenses incurred while litigating this matter are significant, further increasing the risk counsel assumed.  (Attorneys' Fees Mot. at 11-14; *see generally* Schwartz Approval Decl.; Ho Approval Decl..)  This factor therefore supports awarding the fees Class Counsel seeks.

Accordingly, the Court finds this factor weighs in favor of awarding the requested fee.

### E.    Lodestar Crosscheck

Finally, courts use the lodestar method as a cross-check to determine the fairness of a fee award.  *Vizcaino*, 290 F.3d at 1050.  A lodestar multiplier of 1.5 is reasonable where a case settles early.  *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002).  Here, Class Counsel estimates that they will spend approximately 1500 attorney and paralegal hours on this case in total. (Attorneys' Fees Mot. at 10.)  As of March 5, 2015, at their regular and customary hourly rates, Class Counsel incurred approximately $630,225.00 in attorneys' fees under the lodestar approach.[4]  (Final Approval Mot. at 18; Schwartz Approval Decl. ¶ 13; Ho Approval Decl. ¶ 8.)  Class counsel seeks $800,000 in attorneys' fees, only a 1.27 "fee multiplier" under the lodestar approach.  (Attorneys' Fees Mot. at 18.) The lodestar crosscheck therefore confirms the reasonableness of a $800,000 fee award in this case.

---

[4]  Class Counsel asserts that they will continue to spend time on securing final approval and assuring payout to Class Members, which will increase the amount in attorneys' fees under the lodestar approach.  (Final Approval Mot. at 18.)

1    For the foregoing reasons, the Court finds departure is warranted from the

2  Ninth Circuit's benchmark of 25% of the common fund recovery.  Accordingly, the

3  Court approves Class Counsel's request for attorneys' fees in the amount of

4  $800,000.

5

6    **IV.   COSTS**

7    Class Counsel also requests the Court approve $18,000 for actual and

8  expected litigation costs associated with this case.  (Final Approval Mot. at 19.)

9  Class Counsel asserts that, as of March 5, 2015, they have incurred slightly more

10 than $18,000 in actual and expected costs.  (Id.; Schwartz Approval Decl. ¶¶ 14-15;

11 Schwartz Approval Decl., Ex. 2, Doc. 91-2; Ho Approval Decl. ¶¶ 9-13; Ho

12 Approval Decl., Ex. 2, Doc. 91-3.)  The Settlement Agreement provides that Class

13 Counsel may seek an award of up to $25,000 for costs.  (Settlement Agreement

14 § 2.9.1.)  The total amount Class Counsel now seeks for costs complies with the

15 limitation in the Settlement Agreement.  "Attorneys may recover their reasonable

16 expenses that would typically be billed to paying clients in non-contingency

17 matters."  *Omnivision*, 559 F. Supp. 2d at 1048.  Class Counsel has documented

18 expenses incurred in prosecuting this action, which include mediation fees, court

19 and arbitration filing fees, photocopying, postage, legal research expenses, and

20 travel expenses.  (Attorneys' Fees Mot. at 14; Schwartz Fee Decl. ¶ 15; Schwartz

21 Fee Decl., Ex. G, Doc. 82; Ho Approval Decl., Ex. 2.)  Class Counsel also

22 anticipates some additional costs associated with the final approval process and

23 ensuring that Class Members receive their respective payments.  (Ho Approval

24 Decl. ¶¶ 10, 13.)  The Court concludes that Class Counsel's expenses are

25 reasonable.

26    Accordingly, the Court approves the reimbursement of $18,000 in costs.

27

28

18

1    **V.    ENHANCEMENT TO THE CLASS REPRESENTATIVES**

2         The Settlement Agreement authorizes enhancement awards of $15,000.00 to

3    Kenneth Lee, $10,000.00 to Mark Thompson, $10,000.00 to David Acree,

4    $5,000.00 to Joel Cuthbert, and $5,000.00 to Myles Norton.  (Settlement Agreement

5    § 2.9.2.)  District courts have the discretion to award incentive payments to named

6    plaintiffs as compensation for their actions taken on behalf of the class.  *Staton*, 327

7    F.3d at 977; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000).

8    The Ninth Circuit recently emphasized that district courts must "scrutiniz[e] all

9    incentive awards to determine whether they destroy the adequacy of the class

10   representatives."  *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1164

11   (9th Cir. 2013).  Here, Plaintiffs Lee, Thompson, and Acree were personally named

12   as defendants in Defendants' counterclaims.  (Doc. 44 at 23.)  Further, each of the

13   three Class Representatives and two opt-in Plaintiffs released large individual claims

14   and executed broad waivers in order to pursue this case as a class action.

15   (Attorneys' Fees Mot. at 17.)  Finally, each of the individuals receiving

16   enhancement payments incurred significant expenses and/or spent considerable time

17   assisting Class Counsel during litigation, with Lee spending approximately 250

18   hours and $700, Thompson spending approximately 95 hours and $1000, Acree

19   spending approximately 80 hours and $885, and Norton and Cuthbert each spending

20   approximately 40 hours on this case.  (Attorneys' Fees Mot. at 19-20 (citations

21   omitted).)  The proposed enhancement payments totaling $45,000 for the three Class

22   Representatives and two opt-in Plaintiffs therefore appear justified.  (*See generally*

23   Lee Decl., Doc. 71; Thompson Decl., Doc. 70; Acree Decl., Doc. 72; Cuthbert

24   Decl., Doc. 73; Norton Decl., Doc. 74.)  *Cf. Rausch v. Hartford Fin. Serv. Grp.*, No.

25   01-CV-1529-BR, 2007 WL 671334, at *3 (D. Or. Feb. 26, 2007) (granting $10,000

26   incentive fee award).  The enhancement awards proposed for these Plaintiffs are

27

28

also reasonable on the grounds that these Plaintiffs release additional claims against Defendants that other Participating Claimants are not required to release.

Accordingly, the Court approves the enhancement awards of $15,000.00 to Kenneth Lee, $10,000.00 to Mark Thompson, $10,000.00 to David Acree, $5,000.00 to Joel Cuthbert, and $5,000.00 to Myles Norton.

**VI.    CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's Motions.

The parties shall file a proposed judgment in conformity with this Order forthwith.

DATED: April 28, 2015

JOSEPHINE L. STATON

HONORABLE JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE